797 So.2d 440 (2001)
The BIRMINGHAM NEWS COMPANY et al.
v.
Clifford W. LYNCH.
1992184.
Supreme Court of Alabama.
February 23, 2001.
*441 Gilbert E. Johnston, Jr., and James P. Pewitt of Johnston, Barton, Proctor & Powell, L.L.P., Birmingham, for appellants.
D. Leon Ashford, Bruce J. McKee, and Matthew C. Minner of Hare, Wynn, Newell & Newton, Birmingham, for appellee.
PER CURIAM.
Clifford W. Lynch sued the Birmingham News Company ("the News") and several of its employees. The defendants moved to compel arbitration of Lynch's claims. The court denied their motion. The defendants appeal from the order denying their motion to compel arbitration. We affirm in part; reverse in part; and remand.
On August 30, 1998, Lynch entered into two agreements with the News to serve as a commercial dealer or distributor of newspapers. Each agreement contained an arbitration clause.
The News became dissatisfied with Lynch's performance under the agreements, and on July 1, 1999, it terminated Lynch's contracts. Lynch thereafter filed a multicount complaint against the News and certain employees who had worked for the News at relevant times.[1] The defendants filed a "Motion to Stay Civil Action *442 and to Compel Arbitration," supported by affidavits purporting to establish a sufficient relationship between the agreements and interstate commerce to call for the application of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("the FAA"). The trial court denied the motion, without stating reasons.

I. Applicability of the FAA

In a recent case, Ex parte Stewart, 786 So.2d 464 (Ala.2000), this Court held that the FAA applied to similar contracts between distributors and the News. Lynch, with commendable candor, concedes that Stewart would require that we apply the FAA to the agreements in this case. Lynch, however, asks us to reevaluate the relationship between these agreements and interstate commerce and to overrule Stewart. We decline to do so. Thus, we hold that the FAA applies to Lynch's agreements with the News.[2]

II. Applicability of the Arbitration Agreement to the Complaint

Lynch concedes, assuming the applicability of the FAA, that Counts One and Five, alleging breach of contract and unjust enrichment, respectively, are subject to arbitration. Because we hold that the FAA does apply, Counts One and Five are subject to arbitration and the trial court's order must be reversed insofar as it denied arbitration as to the claims stated in those two counts.

A. Whether the News's Termination of the Agreements Affected the Scope of the Arbitration Clause
Lynch contends that even if the FAA applies, his tort claims are not arbitrable because, he contends, they are outside the scope of what he describes as "the narrow and unique arbitration clause at issue." The arbitration clause in each contract reads:
"10. Arbitration:

"Except as herein provided, and as provided in any other provision of this Agreement, all claims and controversies arising out of this contract shall be submitted to arbitration for determination. It is agreed, however, that, if either party shall terminate this contract by reason of the alleged breach thereof by the other party, the sole issues for determination shall be whether or not the termination was valid, whether or not either party shall be entitled to money damages, and, if so, the amount thereof, which issues only shall be submitted to arbitration. It is expressly agreed that in case of such termination, neither party shall be entitled to have this Agreement reinstated nor to be restored to his or its status thereunder, notwithstanding the fact that it may be determined that the termination by the other party was not warranted...."
(Emphasis added.)
Lynch contends that the language of the arbitration clause must be construed in accordance with general contract principles and that, by application of those principles, the agreements, which were drafted by the News, must be construed so as to deny arbitration. Specifically, Lynch maintains that the commitment to arbitration *443 of all claims and controversies "arising out of the agreements is limited by the second sentence, which, according to Lynch, means that when the contract is terminated the only issue that is arbitrable is the validity of the termination. Lynch contends that the six counts of his complaint that state tort claims do not involve the sole issue whether the termination was valid. Hence, under Lynch's reasoning, his six counts stating tort claims are beyond the scope of the arbitration clause.
The arbitration clause can be read in either of two ways. On the one hand, the clause could mean that in the event of termination the contract requires arbitration of the issue of the validity of the termination only, and that any claim for money damages, and all other issues, including any issues not arising from an alleged wrongful termination, are subject to litigation and not to arbitration. On the other hand, the clause could mean that any arbitration of issues arising from an alleged wrongful termination is restricted to the validity of the termination and to any claim for money damages, and that in no event would arbitration of issues arising from an alleged wrongful termination lead to an award requiring reinstatement, even if a party had been wrongfully terminated.
Under traditional rules of contract construction, if a court finds an ambiguity in a contract, the trier of fact determines which competing meaning governs, construing the agreement against the party that drafted it. When an arbitration agreement is at issue, however, this Court is not permitted to resolve the case pursuant to that rule of construction, because the FAA precludes a court from applying general rules of contract construction in a manner that would disfavor arbitration. Justice See addressed this issue in Oakwood Acceptance Corp. v. Hobbs, 789 So.2d 847 (Ala.2001):
"In applying general Alabama rules of contract interpretation to the language of an arbitration agreement subject to the Federal Arbitration Act (`FAA'), this Court must, in accordance with the federal substantive law on arbitration, resolve any ambiguities as to the scope of the arbitration agreement in favor of arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (§ 2 of the FAA `create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act' and `establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration'); Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (in construing an arbitration agreement within the coverage of the FAA, `as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability'); Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 475, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (`in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration' (citation omitted)); see also Homes of Legend, Inc. v. McCollough, [776 So.2d 741 (Ala.2000)]."
789 So.2d at 852.
We therefore are required to adopt that interpretation of the arbitration clause whereby any arbitration of issues arising *444 from an alleged wrongful termination is restricted to the validity of the termination and to any claim for money damages, and under which in no event would arbitration of issues arising from an alleged wrongful termination lead to an award requiring reinstatement, even if a party had been wrongfully terminated. This construction requires that we apply that portion of the arbitration clause requiring arbitration of "all claims and controversies arising out of this contract" to our resolution of the issue of the arbitrability of the six counts in the complaint that state tort claims.

B. Counts Two, Three, and Seven (Alleging Fraud; Conspiracy; and Deceptive Trade Practices)

Count Two alleges fraud in the inducement; Count Three alleges a civil conspiracy. Lynch concedes that his conspiracy claim is derivative of his fraud claim; hence, if Count Two (fraud) is arbitrable, so is Count Three (conspiracy). Lynch contends that Count Two can be read to allege misrepresentations made subsequent to the execution of the agreements in order to induce him to continue with his distribution of newspapers for the News. The balance of the allegations of fraud stated in Count Two relate to fraud in the inducement. Lynch concedes, again with commendable candor, that, pursuant to Old Republic Insurance Co. v. Lanier, 644 So.2d 1258 (Ala.1994) (an agreement for arbitration of claims "arising out of" a contract requires arbitration of claims of fraud in the inducement), he is required to arbitrate Counts Two and Three if we determine, as we have done, that the portion of the arbitration clause requiring arbitration of "all claims and controversies arising out of this contract" applies to those counts. Hence, the claims stated in Counts Two and Three are subject to arbitration, and the trial court's order must be reversed insofar as it denies arbitration as to Counts Two and Threeprovided, however, that Lynch still has the right to proceed outside of arbitration to the extent that these counts allege representations separate from and made after the agreements had been entered.
Count Seven alleges violations of the Deceptive Trade Practices Act, § 8-19-1 et seq., Ala.Code 1975, although it only incorporates other allegations of the complaint. Because Count Seven merely incorporates allegations stated elsewhere in the complaint, it is also subject to arbitration and the trial court's order must be reversed insofar as it denies arbitration as to Count Sevenprovided, however, that on this count Lynch still has the right to proceed outside of arbitration as to any acts that he alleges violated the Act and that were separate from the making of the agreement and that occurred after the agreements had been entered.

C. Count Four (Alleging Violations of the Alabama Antitrust Act)

Count Four alleges violations of § 6-5-60, Ala.Code 1975. In that count Lynch claims he lost business that he otherwise would have enjoyed had the contracts not been terminated. We do not address the issue whether the contracts have a sufficient involvement with interstate commerce to preclude the application of the Alabama Antitrust Act; that issue is not before us.
Lynch contends that the phrase "arising out of," used in the arbitration clause, is narrower than the phrase "relating to." Therefore, he says, the arbitration clause does not apply to Count Four. This Court's earlier arbitration cases have recognized such a distinction as to the scope of these phrases. See, e.g., Koullas v. Ramsey, 683 So.2d 415 (Ala.1996) (arbitration clause referring to disputes or controversies "arising under" an agreement applies only to those claims arising under the terms of *445 the agreement, and does not extend to matters or claims independent of, or merely collateral to, the agreement). See also American Bankers Life Assur. Co. v. Rice Acceptance Co., 709 So.2d 1188 (Ala.1998). Because Lynch's claim stated in Count Four requires an interpretation of the agreements and an examination of the parties' performance under the agreements, we cannot say that the claims or controversies raised by Count Four are independent of, or collateral to, the agreements. Hence, Count Four is subject to arbitration. The trial court's order must be reversed insofar as it denied arbitration of the claims stated in Count Four.

D. Counts Six (Alleging Wrongful Interference) and Eight (Alleging Conversion)

Lynch alleges tortious interference in Count Six by averring that the News "has wrongfully interfered with plaintiff's business relations." He alleges that, "[s]pecifically, defendant has interfered with plaintiff's operations in wrongfully canceling plaintiff's contracts." Lynch alleges conversion in Count Eight by averring that the News converted his newspaper sales racks. The News refers to paragraph 10 of the agreements, providing that "[p]ending the settlement of [a] dispute [i.e., a dispute regarding a termination that a party contends was unwarranted] the business and method of operation under the Agreement shall continue in accordance with the contention of [the News]." The News concedes that it replaced Lynch's sales racks, but contends that its replacing Lynch's racks was consistent with its right under paragraph 10 to continue "the business and method of operation" in the territory covered by the agreements. Lynch relies upon Old Republic for the proposition that claims alleging conversion and tortious interference are not within the scope of an arbitration clause that calls for arbitration of claims "arising out of" a contract. In Old Republic, this Court stated that the plaintiff's count alleging conversion and intentional interference with business relationships "`appears to raise issues largely distinct from the central conflict over the interpretation and performance of the [agreements themselves].'" 644 So.2d at 1263 (quoting Mediterranean Enterps., Inc. v. Ssangyong Corp., 708 F.2d 1458, 1465 (9th Cir.1983)) (emphasis added) (interpolation in Old Republic). In later proceedings involving Old Republic, after remand and trial, the tort claims that this Court had initially thought "appeared" distinct turned out, in fact, not to be claims that could be separated from the interpretation and performance of the contracts. Accordingly, this Court recognized that those very tort claims were arbitrable. See Old Republic Ins. Co. v. Lanier, 644 So.2d 1258 (Ala.2000). Suffice it to say that Counts Six and Eight depend heavily upon the construction of the terms of the agreements, and, under these circumstances, we cannot say that Counts Six and Eight are collateral to, and do not "arise out of," the agreements. Hence, Counts Six and Eight are subject to arbitration. The trial court's order must be reversed insofar as it denied arbitration of the claims stated in Counts Six and Eight.

III. Conclusion

Except to the extent Counts Two and Three state claims that may be pursued outside arbitration (see Part II.B., last sentence of the first paragraph), and except to the extent Count Seven states claims that may be pursued outside arbitration (see Part II.B., second paragraph), the trial court erred in denying the defendants' motion to compel arbitration of the claims stated in Lynch's complaint. Except *446 as to the two exceptions stated here, the order denying arbitration is reversed; as to those two exceptions, the order is affirmed; and the case is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOUSTON, BROWN, HARWOOD, and STUART, JJ., concur.
MOORE, C.J., and LYONS, J., concur in part and dissent in part.
SEE and WOODALL, JJ., recuse themselves.
LYONS, Justice (concurring in part and dissenting in part).
To the extent of the two exceptions as to which the main opinion affirms the order of the trial court, I concur. However, to the extent the main opinion reverses the trial court's order denying arbitration, I respectfully dissent, for the reasons stated in my dissenting opinion in Ex parte Stewart, 786 So.2d 464 (Ala.2000).
MOORE, C.J., concurs.
NOTES
[1] In his complaint, Lynch identified the individual defendants as follows: "Defendants, Paul Thacker, Tracy Bowers, Jim Keeble, Toby Pearson and Lorenza Huggins are employees of the Birmingham News with responsibility for circulation and interaction with independent dealers such as the plaintiff. Defendant, Victor H. Hanson, II, is President and Publisher of the Birmingham News. Defendant, Victor H. Hanson, II, is the Chief Operating Officer of the Birmingham News."
[2] In their brief, the defendants state that there is "no dispute that, if the arbitration agreement is enforceable, all of the defendants will be entitled to the benefit of it," citing McDougle v. Silvernell, 738 So.2d 806 (Ala.1999), and Georgia Power Co. v. Partin, 727 So.2d 2 (Ala.1998). Lynch does not challenge the contention that his claims against the individual defendants are arbitrable if his claims against the News are arbitrable.