LYONS, Justice
(concurring specially).
I write specially to respond to Justice Shaw’s dissenting opinion.
The dissenting opinion relies on two separate and independent theories. First, the dissenting opinion concludes that the dispute under the oral contract arose out of, or was related to, the written architecture contract between Beaufort Engineering Services, Inc., d/b/a BES, Inc. (“BES”), and Baldwin County Cattle and Fail’ Association (“the Fair Association.”). Second, the dissenting opinion concludes that the terms of the architecture contract apply to, and were incorporated as a part of, the subsequent oral contract.
Turning first to the conclusion that the oral contract arose out of, or was related to, the architecture contract and therefore that the arbitration clause in the architecture contract applies to a dispute regarding the oral contract, we do not here deal with arbitrability of tort claims arising out of a contract containing an arbitration clause such as was presented in Elizabeth Homes, L.L.C. v. Cato, 968 So.2d 1 (Ala.2007), and Koullas v. Ramsey, 683 So.2d 415 (Ala.1996). A distinction exists between such cases and cases such as this one, where the question is the arbitrability of claims in separate contracts where only one contract contains an arbitration clause. See Mirant Americas Energy Marketing LP v. 1st Rochdale Coop. Group, Ltd., 368 F.Supp.2d 679, 681-82 (S.D.N.Y.2005):
“While federal policy ‘strongly favors arbitration,’ and arbitration clauses should therefore be construed ‘as broadly as possible,’ Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir.1995), ultimately, since arbitration is a contractual matter governed by the parties’ stated intent, a party cannot be required to submit a claim to arbitration without its contractual consent, express or implied, JLM Industries, Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 171 (2d Cir.2004). The question, therefore, is whether the arbitration clause in the Credit Agreement can be construed as covering a dispute that does not arise out of an alleged breach of that agreement and does not require construction of that agreement.
“It is clear that, under some circumstances, an arbitration clause in a contract can bind parties to arbitration even when the claim is not breach of that contract. However, the Second Circuit has struggled to articulate a useful test of when those circumstances are found. See id. at 172-73 (acknowledging that tests do not yield ‘principled way’ of determining which claims should be arbitrated); Mehler v. Terminix Int’l Co. L.P., 205 F.3d 44, 50 (2d Cir.2000) (collecting various tests Circuit has stated, seemingly interchangeably). In some cases, the Circuit has required the claim to ‘implicate issues of contract construction or the parties’ rights and obligations under’ the contract containing the arbitration clause, Louis Dreyfus Negoce v. Blystad Shipping & Trading, Inc., 252 F.3d 218, 225 (2d Cir.2001); Collins & Aikman, 58 F.3d at 23, while in others it has required only that the claim ‘touch matters’ covered by the contract, a test which potentially sweeps a broader set of claims into arbitration, Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d Cir.1987).
“On closer scmtiny, however, it is apparent that the cases employing the ‘touch matters’ test do not involve a choice between two contracts (as here), or, indeed, contractual claims at all. Instead, in these cases plaintiffs have sued in tort, alleging misdeeds by defen *569 dants related to the making and performance of the contracts. See JLM Industries, 387 F.3d at 176 (antitrust claims alleging that defendants conspired to fix artificially high prices through a series of contracts were ‘arising out of the contract); Genesco, 815 F.2d at 845-47 (RICO claims alleging that suppliers engaged in conspiracy to overcharge and supply defective goods were ‘matters relating to the agreements between the parties’); see also Kerr-McGee Refining Corp. v. M/T Triumph, 924 F.2d 467, 468-69 (2d Cir.1991). Indeed, the ‘touch matters’ language originated in Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 624 n. 13, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), which itself involved an alleged conspiracy to violate the Sherman Act.
“On the other hand, where, as here, the question is ivhether the arbitration clause in one contract should govern a claim alleging breach of a different contract, the Second Circuit consistently has asked whether the claim requires construction of the contract that contains the arbitration clause or otherwise implicates the parties’ rights and obligations under that contract. See Louis Dreyfus, 252 F.3d at 228-29; Collins & Aikman, 58 F.3d at 23; see also Lewis v. N.J. Sports Prods., Inc., [No. 02 Civ. 6505 SAS, March 12, 2003] (S.D.N.Y.2003) (collecting cases) [not reported in F.Supp.2d].”
(Emphasis added.)
Here the architecture contract predated the formation of the oral agreement. The architecture contract actually refers to the other contract as an event to occur in the future; no aid is thus available to BES under the rule requiring construction of contemporaneous agreements as a whole. Although the performance of the work in the alleged oral contract was a necessary predicate for the performance of the architecture contract, I see nothing in the record before us that requires construction of the architecture contract to resolve the dispute under the alleged oral contract.
Alabama law is no different than the rule expressed in Mirant Americas Energy Marketing LP. We stated in Koullas v. Ramsey, 683 So.2d at 418, dealing with whether to sweep tort claims under an arbitration clause that “in order for a dispute to be characterized as arising out of or relating to the subject matter of the contract, and thus subject to arbitration, it must at the very least raise some issue that cannot be resolved without a reference to or construction of the contract itself.” Here any reference to the architecture contract is nothing more than an acknowledgment of its existence and not a referral to its terms for the determination of any issues. Because no provision of the architecture contract requires interpretation in order to determine the issue of breach of the alleged oral contract, I cannot accept the dissenting opinion’s conclusion that the dispute under the oral contract arose out of, or was related to, the architecture contract.
The dissenting opinion concludes that the terms of the architecture contract apply to, and were incorporated as a part of, the oral contract as additional justification for reversal of the trial court’s judgment. The dissenting opinion notes the argument presented in the trial court that “‘[t]he arbitration provision and other material provisions of the [architecture contract] apply to the Oral Contract, and are incorporated therein by reference, with the exception of the compensation provisions thereof.’ ” 33 So.3d at 573. The dissenting opinion then points to the affidavit of William W. Bolton, president of BES, in which he stated: “ ‘[At that time], we en *570 tered into an oral agreement [with the Fair Association] that we would do that work at our customary hourly rates, but otherwise the terms of that oral agreement were the same as those of the [architecture contract].’ ” 33 So.3d at 573. The dissenting opinion then relies on this contention and the evidence in support thereof to argue for reversal of the trial court’s order denying arbitration.
Nowhere in BES’s principal brief to this Court is there any reference to the aforementioned testimony of Bolton featured in the dissenting opinion dealing with the incorporation of the terms of the architecture contract into the oral contract.
“It is fundamental that the parties have the duty to include in their briefs a statement of all facts relevant to the issues presented for this Court’s review. Indeed, Ala. R.App. P. 28 makes that duty crystal clear. Initially, the appellant’s brief must include ‘[a] .full statement of facts relevant to the issues presented for review, with appropriate references to the record.’ Rule 28(a)(7) (emphasis added). Rule 28(b) requires the appellee to conform to the requirements of subdivision (a)(7), if ‘the ap-pellee is dissatisfied with [the] statements as made by the appellant.’ Also, the argument of each party must contain ‘the contentions of the [party] with respect to the issues presented, and the reasons therefor, with citations to the ... parts of the record relied on.’ Rule 28(a)(10) (emphasis added). Where the appellee makes no correction or addition to the appellant’s statement of the facts, ‘[t]he statements made by appellant ... will be taken to be accurate and sufficient for decision.’ Taylor v. First Nat’l Bank of Tuscaloosa, 279 Ala. 624, 628, 189 So.2d 141, 144 (1966). Obviously, ‘ “this Court is not under a duty to search the record in order to ascertain whether it contains evidence that will sustain a contention made by either party to an appeal.” ’ Brannan & Guy, P.C. v. City of Montgomery, 828 So.2d 914, 920 (Ala.2002) (quoting Totten v. Lighting & Supply, Inc., 507 So.2d 502, 503 (Ala.1987)).”
Johnson v. Stewart, 854 So.2d 544, 551-52 (Ala.2002) (opinion on application for rehearing). We are entitled to assume that the facts set forth in BES’s principal appellate brief are “sufficient for decision.” As noted, BES’s principal brief does not refer to the aspect of Bolton’s testimony relied on in the dissenting opinion.
BES’s entire argument as to this issue in its principal brief to this Court is as follows:
“It is reasonable to assume that the parties’ reference in their [architecture contract] to a second agreement to be made later, involving the same underlying transaction, would otherwise include the same terms as their [architecture contract]. For that reason, we submit that the arbitration provision in the [architecture contract] should be deemed incorporated into the later Oral Contract.”
Only by completely ignoring the requirements of Rule 28(a)(10), Ala. R.App. P., that the argument of each party must contain “the contentions of the [party] with respect to the issues presented, and the reasons therefor, -with citations to the ... parts of the record relied on,” can reversal of the trial court’s judgment on this issue be justified. The dissenting opinion states in n. 2: “However, I offer the separate and independent theory that the terms of the architecture contract were incorporated into the oral contract only to respond to Justice Lyons’s extensive argument in his special writing regarding whether the arbitration provision in the architecture contract applies to the dispute in question.” *571 33 So.3d at 576. Of course, this “separate and independent theory” cannot afford a basis on which to reverse the judgment of the trial court without disregarding our rule that we will not reverse a judgment on arguments not made in the appellant’s principal brief. Pardue v. Potter, 632 So.2d 470, 473 (Ala.1994) (“Issues not argued in the appellant’s brief are waived.”). See also Smith v. Mark Dodge, Inc., 934 So.2d 375, 380 (Ala.2006) (“In [Capitol Chevrolet & Imports, Inc. v.] Payne[ 876 So.2d 1106 (Ala.2003) ], by not addressing the First Options [of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995),] clause issue, this Court was simply following the well-settled rule that we do not reverse a trial court’s judgment on a ground not raised on appeal.” (emphasis added)).